UNITED STATES' DISTRICT COURT
DISTRICT OF RHODE ISLAND

CIVIL ACTION NUMBER: 06-312ML

AZUBUKO –
Plaintiff

v.

JUDGE R. G. STEARNS

## PLAINTIFF'S SPECIFIC OBJECTION TO THE COURT'S POTENTIAL DISMISSAL INTENTION

The Plaintiff received the Court's Order with the propensity of dismissal of the Plaintiff failed to file specific objection within ten-day dated July 14th – 2006 and postmarked self-same date on the 19th instant. These would be specific objection bases for the possibility of dismissal:

**A. FILING FEE WAIVER GRANT**

01) Ordinarily, when pedestrians got to the bridge, they would like to cross it Importantly, the Plaintiff had to express unquantifiable gratitude to the august Court for the grant of the filing fee-waiver. "A good thing done to a child will always be in her/his mind."

**B. SUA SPONTE AND 28 U.S.C. SECTION 1915(e)(2)**

01) Generally, it had been asked thus: "Chickens or the eggs, which one come first." The answer would not be as plain as the nose had been on the face, indeed! The source of 28 U.S.C. Section 1915(e)(2) had statutory origin or source: it would not be considered constitutional, in any shape or form. Or, could it? Then, Equal Protection

and Due Process Clauses had resoundingly constitutional origins – Fifth Amendment – given that the 14th Amendment was tailored for the States. Under normal circumstances, constitutional source of the law would not be plenary equals with the statutory source of the law.

02) More, it would be crassly unintelligent and unconstitutional to preclude a litigant from pursuit of justice central to her/his inability to pay the filing fee. There had been numberless precedent, which underscored what the Plaintiff drove at. [*Martinez v. Kleaners, Inc.*, et al., 11th Cir. No. 02-16019; *Meltzer v. Lecraw*, 402 U.S. 936 (1971)] The invaluability of *stare decisis* or precedents in the United States' jurisprudence system would not be over-emphasized. Excerpt from the precedents [respectively] read:

> "We hold that the district court abused its discretion by denying *Martinez's* motion, and vacated and remand with instructions.
>
> "On March 2, 1971, this Court decided *Boddie v. Connecticut*, 401 U.S. 371, holding that Connecticut could not consistently with the Due Process and Equal Protection Clauses deny access to its divorce courts to indigents unable to pay relatively small filing and service of process fees. We now have eight other cases pending on appeal or on petition for writ of certiorari in which indigents were denied access to civil courts because of their poverty."

03) The Court could argue that that never applied to its inclination to dismiss on that ground. The 28 U.S.C. Section 1915 was hypocritical and deceitful. It was a case of taking with left hand what was given with right hand. Undoubtedly, it triggered off conflict of law and when that prevailed, it should be resolved in favor of the litigant who substantially relied on the other aspect of the law. Reiteratively, Equal Protection and Due Process Clauses would not be considered the least constitutional doctrines in the United States, let alone the world over.

04) It would be markedly deviation from the rule of law to argue that the Defendant was above the law. Such a conclusion contradicted the law constitutionally and statutorily. [Article III Section 2 – The judicial power should extend to all cases … other public ministers and consuls …;" Federal Tort Claims Act - 28 U.S.C. Section 1346(b), 2671-80; *Truman v. United States*, 26 F.3d 592 (5th cir. 1994); Restatement (Second) of torts Section 46 (1965)] Excerpts from the precedent read, thus:

"Negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

"Thus, in Block, the Supreme Court held that the plaintiff could maintain a cause of action against the government for negligently failing to detect defects in the construction of a house, even though the plaintiff in that case may also have had a claim for misrepresentation—a tort excepted from the FTCA by section 2680(h)."

## C. UNCONSTITUTIONAL FACTS

Of course, the Plaintiff was not the author of First Amendment. The Defendant condescend to group thinking jurisprudence. First and foremost, what underscored the Plaintiff's restriction of access to the Massachusetts' District Court? Could it be that the Plaintiff manifested diminished responsibilities [as a matter of general law]? Could it be that the Plaintiff failed to pay child support to the grand-daughter or son of the said Court? Could it be intent to condemn the Plaintiff to the slavery status and in stark violation of the 13th Amendment? Was the Plaintiff the author of the First Amendment? Should doctors restrict access to hospital on the basis of these or those? Would it not constitute multifarious discriminatory intent to institute such a restrictive mechanism [selectively]? Was it not known that when two individuals. who were similarly situated were not treated evenly, it constitute/ed discrimination? Did the United States Constitution espouse deprivation of Equal Protection and Due Process or the Substantive Procedural Due Process Clauses? Would it be intelligent for the Defendant and his colleagues running around hypothetical under the color of administration of justice and rattling out, thus: "Who is my neighbor?" Constitutionally, they could do that, but they needed not to love the Plaintiff, but simultaneously they needed not harm the Plaintiff. The restrictive or selective access was palpably harmful [constitutionally]

## D. RE: FRIVOLOUS

The designation of anything to be frivolous appeared to be a matter of semantic. In essence, an evaluation of remark to be frivolous or non-frivolous could be anybody's guess. Inevitably, it would be superfluously subjective. It would be akin to meeting someone at an intersection sauntering and panting. Was s/he being chased or could it be that s/he was chasing someone? Psychologists admonished against sweeping over-

generalization in a similar scenario, because the tongue of a dog could be likened to that of mankind. In brief, mankind could be deceitful and plethora of scenarios cemented such a belief. "Taste cannot be standardized."

**E. RE: "FAILS TO STATE A CLAIM ..."**

That was untrue, in all modesty. How could one cry without tears gushing out from the eyes? How could a child be delivered devoid of gestation? How could a wise wo/man embark on a journey without a destination? Could it be that the Court angle at construction of realities? [With emphasis] However, an oath of office was taken to administer the law without fear or favor or irrespective of whose horse would be gored or no matter how high one would be placed. That had bearings on subjective evaluation. It associated with no scientific barometer to a reasonable extent. It would be advantageous to disclosing that the Plaintiff abhorred prostitution of time and had no propensity for flogging a dead horse, in a state of grace.

**F. RE: STANDARD OF REVIEW – 28 U.S.C. Section 1915(e)(2)(B)**

The Plaintiff had painstakingly particularized on the subject above. Constitutional would not be confiscated without moral qualm. Doing so would be akin to a baby-minder/sitter being nice to a child only in the presence of her/his mother. The invaluability of moving heaven and earth by Ministers of Justice to ensuring that "Justice will be done and be seen to be done," at all material times would not be over-emphasized. The Constitution of the United States was nonpareil or matchless! Judges should be likened to hunting dogs and the Constitution itself be the hunter. Therefore, how could a hunting dog act contrary or close its eye to/at the objectives of the hunter or its owner? The Defendant's unconstitutional dissemination of cancerous unconstitutional crusade against the Plaintiff expressly or implicitly to a third party never meshed with the law, in any shape or form. The Defendant should know better. The law neither tergiversated nor circumlocuted. The Defendant failed to act upon what he ought to be preaching – timeless respect to the law.

**G. UNCONSTITUTIONAL ACTION AND AVENUE FOR LOST OF JUDICIAL IMMUNITY**

Hopefully, the Court would hear what the Plaintiff had to say, because there was

water in the Plaintiff's mouth, in all modesty. One sentence or two was not the issue. The crux had been what was communicated. The law had been independent of the economics' quantity theories analysis. If it were so, then, there would be nothing like "Assault" – subjection of an/other to imminent bodily harm. Again, the cautionary statement was nakedly unconstitutional and cancerous/poisonous. The question that had to be tenaciously asked and answer tenaciously demanded will be thus. Was the restrictive access to the court, which the Defendant aimed at its crusade or proverbialism or cynosure constitutional? If a no answer, then, the Defendant had kissed and he had to marry mandatorily and not directorily.

**H. RE: LITIGATION HISTORY**

No fish lived without water. No wo/man should live historylessly. A servant A said that "My master will be doing something with the wine." Servant B replied, thus: "What else will your Master does with the wine, besides drinking?" Of course, one had to stand out for good or bad acts. Glory, the Plaintiff would not be associated with aggravated felonies. The litigation history should not be broached upon central to its immateriality. Invaluable time should not be prostituted with individually or collectively. It would be injudicious to essay to control what had been self-controlled – malicious lawsuit attracted compensatory lawsuit. That had never happened that meant that the Plaintiff should be likened to a good mail sorter who determined, which mail boxes to place the mails vis-à-vis the mail box numbers specified [on the envelopes] "How large large?" Hopefully, the august Court would not expect the Plaintiff to shave his teeth!

**I. UDGES ENJOYED NO ABSOLUTE IMMUNITY BUT QUALIFIED IMMUNITY**

If the august Court would agree with the Plaintiff, though osmotically, she got hold of the wrong end of the stick on that, once more. Well, the Plaintiff could understand too. Besides, "Sometimes, Homer, nods." No immunity existed when a Judge's action mirrored "But an act done in complete absence of all jurisdiction cannot be a judicial act." [*Piper v. Pearson*, 2 Gray 120, cited in *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872)] An excerpt read:

"Federal Tort Law: Judges cannot invoke judicial immunity for acts that violate litigants civil rights." [Robert Craig Waters, Tort & Insurance Law Journal, Spr. 1986 21 n3. P509-516]

Reiteratively, the unconstitutionality of the action typified "Provided he is not divested of *all jurisdiction.*" The Supreme Court's plethora of rulings markedly dissociated from the Court's questionable conclusion or stance. [Exhibits 1 and 2] The truth could be tested!

**J. RE: VENUE**

The venue was superfluously proper, in any shape or form. The necessary parties needed not to be resident of Rhode Island, so as to use the court, which belonged to the sovereign. – the United States. The case was not with the State's Court. The focus should be the *"national contacts"* with the United States and not Rhode Island. The saga of "Long Arms Statute" had been pulverized. [Fed. R. Civ. 4(e), (i) and (k); Power To Issue Writs: The Act of 1789] The restriction and its antecedent crusade to the third party had bearings on anti-trust too. [Clayton Act Section 12; "The U.S. Law Weekly – Third Circuit Broadly Construes Clayton Act: Venue, Service of Process Requirements – Volume 72 Number 32: Tuesday – March 2 – 2004: ISSN 1522-4317; ***GTE Media Servs. Inc. v. Bellsouth Corp.***, 199 F.3d 1343 (D.C. Cir. 2000) – "invocation of the nationwide service clause rests on satisfying the venue provision"] "Mankind would not be equated with goat/s."

**CONCLUSION**

Glory, the Court significantly agreed with the Plaintiff – "However, even applying these liberal standards of review to Plaintiff's Complaint, dismissal is required." But the Court should not recourse to that unmindful of the jurisprudence implications microscopically and macroscopically. Mankind had the propensity of being ignorant about [their] pluralistic and not singularity representation. The Plaintiff had majestically and humbly provided the august Court with the necessary hand holding she needed to ensuring scientific ruling on the proceedings given that neutrality should be one of the striking characteristics, which civil service and jurisprudence associated with. The facts and the law were presented in non-delusional manners and without hearing a grain of voice of John the Baptist. The Plaintiff would like the Court to use that excerpt as her compass in the course of her deliberation, thus:

"The common denominator of all these maxims of prudence is the concept of judicial restraint, of judge's restraint. "We do not sit," said Justice Frankfurter, "like kadi under a tree, dispensing justice according to considerations of individual expediency." "[A] jurist is not to innovate at pleasure," wrote Justice Cardozo. "He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to the primordial necessity of order in the social life." All Justices will, of course, claim adherence to proper restraint, but in some cases at least, such as Justice Frankfurter's dissent in the Flag Salute Case, the practice can be readily observed. The degree, however, of restraint, the degree to which legislative enactments should be subjected to judicial scrutiny, is a matter of uncertain and shifting opinion."

The Plaintiff hardly aimed at "Teaching his grand-mother how to suck eggs." The ball had been in the court of the Court. The Plaintiff effusively prayed the Court to refrain from mortgaging her conscience over the proceedings. A correspondence to a blind-wo/man with an actual malice never constituted defamation given that the blind-wo/man would read the correspondence by her/him self. If read by a third party to the blind-wo/man, the law of defamation had resoundingly attached. The law could rear its head were one considered it to be non-existent hence one had to be extraordinarily careful not only on Christmas and New Year Eves.

Respectfully submitted on Thursday – July 20th – 2006.

CHUKWUMA E. AZUBUKO,
Pro Se,
P. O. Box 1351,
Boston – MA 02117-1351.
Telephone: (617) 265 6291.

**CERTIFICATE OF SERVICE**

The Plaintiff did not serve the Defendant to avoid legal ingratiation – Complaint associated with an Answer. That had not been the case: the Court usurped the roles of the Defendant's Attorney. Well, the Plaintiff could understand!

CHUKWUMA E. AZUBUKO,
Pro Se.